FILED
SCRANTON

JUL 2 4 2012

PER _____
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

ANGELA KAIRO-SCIBEK,

               Plaintiff,

      v.

WYOMING VALLEY WEST SCHOOL
DISTRICT,

               Defendant

Case No. 3:09-CV-01421

(Judge Kosik)

## MEMORANDUM

This case concerns the suspensions of Angela Kairo-Scibek ("Plaintiff" or "Kairo-Scibek") from her position as a teacher for the Wyoming Valley West School District ("Defendant" or "District"). Kairo-Scibek alleges that the District violated her rights under 42 U.S.C. § 1983 because the District deprived Kairo-Scibek of her right to procedural due process pursuant to the Fourteenth Amendment. Presently before us is the District's Motion for Summary Judgment against Kairo-Scibek's § 1983 claim. We have subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343, because the claims in the Complaint raise federal questions.

## PROCEDURAL HISTORY

On July 22, 2009, Kairo-Scibek filed the Complaint against the District. (Doc. 1.) The District then filed a Motion for Judgment on the Pleadings on March 1, 2010. (Doc. 14.) The court referred this motion to United States Magistrate Judge William T. Prince for purposes of preparing a Report and Recommendation. (Doc. 24.) The Report and Recommendation, dated May 19, 2010, recommended a denial of the District's Motion for Judgment on the Pleadings. (Doc. 25.) The District filed objections to specific portions of the Report and Recommendation. (Doc. 26.) In our Order of September 7, 2010, we adopted in part the Report and Recommendation and denied the District's Motion for Judgment on the

Pleadings. (Doc. 29.)

On November 14, 2011, the Defendant filed a Motion for Summary Judgment. (Doc. 40.) In response to Defendant's Statement of Material Facts ("SOF") (Doc. 41), Kairo-Scibek filed Plaintiff's Counter-Statement of Material Facts ("COMF") (Doc. 48) and Plaintiff's Response to Defendant's Statement of Material Facts ("RSOF") (Doc. 49) on December 19, 2011.

The District filed a Motion to Strike Plaintiff's Counter-Statement of Material Facts on December 29, 2011, pursuant to Local Rule 56.1, which requires a non-moving party to file a short and concise statement of material facts responding to the numbered paragraphs of the moving party's SOF. (Doc. 54.) The District's motion will be granted as Kairo-Scibek wrongfully submitted the COMF. However, Kairo-Scibek also submitted a proper response to the District's SOF. (Doc. 49.) Accordingly, in ruling on the motion for summary judgment, the record will be considered as a whole.

## FACTUAL BACKGROUND

Kairo-Scibek is a teacher at Wyoming Valley West School District and began teaching there full-time in 1999. (SOF ¶ 8.) From 1999 to 2007, she held the position of a fourth and fifth grade learning support teacher. (Pl. Dep. 9:10, 14-17.) Kairo-Scibek's employment is governed by a collective bargaining agreement ("CBA"), which included a provision that "no member of the bargaining unit shall be discharged, disciplined, suspended or laid off without just cause," (Compl. ¶ 8) and a provision that outlined grievance and arbitration procedures if there was a claim that the terms of the CBA were violated.

In 2007, parents of three students reported allegations of abuse by Kairo-Scibek to the police. (SOF ¶ 37.) The students alleged "they were struck with a paddle and had their faces shoved into a pillow to prevent them from screaming." (Garzella Dep. Ex. 5.) On March 28, 2007, police executed a search warrant on Kairo-Scibek's classroom. (SOF ¶ 9.) The police confiscated one wooden pointer, one wooden pointer with a paddle on one end, and a wooden yard stick. (Garzella Dep. Ex. 5.) Following the search, the police read Kairo-Scibek her rights and informed her of the charges against her, what they were looking for, and what they

2

had found. (Pl. Dep. 13.)

Kairo-Scibek worked the following day, March 29 2007.[1] (Pl. Dep. 14:11-12.) At the end of the day, the principal, Raymond Whalen, told Kairo-Scibek to collect her belongings since she was being placed on suspension with pay. (Pl. Dep. 13.) The decision to suspend her with pay was made by the school board president at the time, Barry Williams, and the superintendent, Mike Garzella. (Williams Dep. 7:2-5.) Kairo-Scibek did not receive a hearing and the District did not conduct an independent investigation before or after the suspension with pay. (Compl. ¶ 11.) Superintendent Garzella stated that the District did not conduct an independent investigation because the matter was being investigated by the police and Luzerne County District Attorney's office. (Garzella Dep. 11-13.) After Kairo-Scibek was suspended with pay, she spoke with board member and Plymouth Borough Administrator, Joey Mazur. (Pl. Dep. 63-64.) Kairo-Scibek stated Mazur "listened to what I had to say, what had happened, and he said he would see what he could do for me . . . [meaning] to find out more information . . . ." (Pl. Dep. 64:8-11.) In the record before us, Mazur does not confirm nor dispel this conversation, but both parties agree that no hearing was given to Kairo-Scibek after she was suspended with pay. (Mazur Dep. 17:22-25, SOF ¶ 65.)

While Kairo-Scibek was on suspension with pay, her position at Main Street Elementary was absorbed. (Pl. Dep. 18.) Meanwhile, a teacher with lower seniority retained her position as an Elementary Learning Support teacher. (Compl. ¶ 20.) The District stated this was done in accordance with the CBA, which allows the administration to determine placement of teachers, regardless of seniority. (Garzella Dep. 27-28.) While on suspension with pay, Kairo-Scibek applied to an open position at the high school with the request to return to her previous position at Main Street Elementary if it was reabsorbed. (Pl. Dep. Ex. 1.) On August 27, 2007, Kairo-Scibek was assigned to the position of High School Special Education Teacher. (Pl. Dep. Exhibit 2.) Kairo-Scibek's salary did not change as a result of

---

[1] This date differs from the date, March 20, 2007, admitted to in the Complaint and Answer. The court finds March 29, 2007, to be the correct date of suspension with pay as it is consistently mentioned in the depositions and admitted to in the District's SOF.

the new position, and she continued to remain suspended with pay. (Pl. Dep. 22.)

Kairo-Scibek was arrested on December 19, 2007, and charged with three counts of endangering welfare of children, a felony in the third degree, and three counts of simple assault, misdemeanors in the first degree. (Criminal Docket CP-40-CR-0000745-2008.) As a result, the Wyoming Valley West School Board (Board) suspended Kairo-Scibek without pay at their next session on December 27, 2007. (SOF ¶ 59.) Board president at the time, Barry Williams, stated this action was consistent with a previous incident, where an employee was suspended without pay upon being arrested for molesting a student. (Williams Dep. 8-9.) Also consistent with the previous incident, Kairo-Scibek did not receive a hearing before or after being suspended without pay following her arrest. (Compl. ¶ 17.) Kairo-Scibek received notification of this suspension from the Board in a letter stating,

> "Please be advised, at the December 27, 2007 school board meeting, the Board of Directors passed a resolution to place you on suspension without pay. The suspension will be in effect pending the outcome of your imminent hearing."

(Garzella Dep. Ex. D.)

Upon being arrested, the story surrounding Kairo-Scibek's arrest and suspension received media coverage from local newspapers and news stations. (Garzella Dep. 20-21, Williams Dep. Ex. 1, 2.) The media coverage was consistently characterized by school board members to be medium to high. (Garzella Dep. 21:1-2, Fender Dep. 33:9, Mazur Dep. 31:18.)

On March 20, 2008, Kairo-Scibek filed a grievance pursuant to the CBA. (SOF ¶ 20.) A union representative, Linda Houck, assisted Kairo-Scibek though the grievance procedure. (SOF ¶ 22.) The stated nature of the alleged grievance was, "District fails to provide salary and benefits according to terms of CBA; and any other applicable provision. We request reinstatement of salary and all benefits under our contract such that employee is made whole." (CSOF Ex. C.) The grievance references violations of twelve (12) paragraphs of the CBA, including Article II, Paragraph 9, which states, "No member of the bargaining unit shall be discharged, disciplined, suspended or laid off without just cause." (Compl. ¶ 8.) The grievance was referred to binding arbitration after the Board's inaction on May 14, 2008, was deemed a denial. (Garzella Dep. Ex. 8, Pl. Dep. Ex. 4.) In a letter dated October 6, 2008,

Richard Goldberg, Board Solicitor for labor, confirmed the District's availability for arbitration on April 23, 2009. (Garzella Dep. Ex. 9.) Kairo-Scibek never took her grievance to the scheduled arbitration. (Pl. Dep. 27-28.)

On October 14, 2008, all of the charges against Kairo-Scibek were nol prossed because the three minors admitted to lying about the allegations of abuse. (Compl. ¶ 18.) Consequently, the District reimbursed Kairo-Scibek's salary and benefits and allowed her to assume her new position as a High School Special Education teacher. (SOF ¶¶ 23-24.) Due to the advice of the union, Kairo-Scibek dropped the grievance before the date of arbitration. (Pl. Dep. 27-28.) The union representative told Kairo-Scibek she was "really not going to get anywhere" since she received back pay and was removed from suspension. (Pl. Dep. 28:6-8.) Kairo-Scibek was advised that she would have to initiate new grievances. (Pl. Dep. 28:8-10.)

Superintendent Garzella's secretary called Kairo-Scibek on October 14, 2008, and told Kairo-Scibek she could return to work the next day. (Pl. Dep. 34:10-13.) At that time, Kairo-Scibek felt she was mentally unable to return to work. (Pl. Dep. 34:18-24.) Kairo-Scibek took two weeks of sick leave and then assumed her position as a High School Special Education teacher. (Pl. Dep. 34:19.) In mid-spring, Kairo-Scibek began feeling symptoms of post-traumatic stress disorder, and she was afraid to be around children. (Pl. Dep. 35:17-21.)

While Kairo-Scibek was suspended, teachers in the District were offered the opportunity to take part in Bridges, a program that helps teachers take courses, and examines courses already taken, to help determine what is required to become a "highly qualified" teacher in a specific area. (Pl. Dep. 56:4-13.) Kairo-Scibek received a letter from the District stating she was not highly qualified. (Pl. Dep. Ex. 6.) In response, Kairo-Scibek spoke with an individual from the Department of Education and received an email saying that she was highly qualified in reading and special education, in kindergarten through twelfth grade. (Pl. Dep. 55.) Kairo-Scibek asserts she was harmed when she was not given the opportunity to take courses and become highly qualified in other areas due to her suspension. (Pl. Dep. 56-57.)

Kairo-Scibek took a sabbatical for the 2009-2010 school year. (Pl. Dep. 38:8-10.)

Kairo-Scibek stated numerous people recommended that she take time away from work, including her health care provider. (Pl. Dep.17-24.) During her sabbatical, on August 28, 2009, Kairo-Scibek was assigned to the position of High School Learning Support teacher per her request. (Pl. Dep. Ex. 5.) When Kairo-Scibek returned from the sabbatical, she assumed that position and taught twelfth grade. (Pl. Dep. 51:9.) Kairo-Scibek stated she requested the new position because the students who made the allegations against her would be in ninth grade that year, the grade she was previously teaching. (Pl. Dep. 50:9-11.)

To date, Kairo-Scibek is taking medication for depression and anxiety. (Pl. Dep. 41, 43.) She is also seeing a therapist weekly or bi-weekly depending on how she feels. (Pl. Dep. 41, 42.) Additionally, Kairo-Scibek believes the stress from the allegations and suspensions caused her to become a Type II diabetic, whereas before the incidents, she was borderline diabetic. (Pl. Dep. 44:18-23.) Kairo-Scibek also asserts that she now suffers from insomnia due to the stress and anxiety the situation created, whereas previously, she had borderline narcolepsy. (Pl. Dep. 46.) As a result of the allegations and suspensions, Kairo-Scibek states that she also suffers from panic attacks and panic disorders. (Pl. Dep. 47:6-7.)

## DISCUSSION

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249. The court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party

6

has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257; see Celotex Corp., 477 U.S. at 323-24. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

If the court determines that the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, then no genuine issue for trial exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

Although we view the facts in the light most favorable to the non-moving party, the non-moving party has the duty to present affirmative evidence to support each essential element of his claim in order to defeat a properly supported motion for summary judgment. See Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001). A comprehensive review of the record makes clear that no material fact is in dispute. Therefore, summary judgment is appropriate.

## II.   SECTION 1983 LIABILITY

Generally, 42 U.S.C. § 1983 allows a plaintiff to recover if he or she shows "(1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law." Smith v. Borough of Dunmore, No. 3:05-CV-1343, 2011 WL 4458787 (M.D. Pa. Sept. 23, 2011) remanded from, 633 F.3d 176 (3d Cir. 2011). Although a municipality cannot be held liable under the theory of respondeat superior, municipalities can be liable if a person "who may fairly be said to represent official policy," causes the injury to a constitutionally protected right when "executing a government's policy or custom." See Monell v. Dept. of Soc. Serv. of City of N.Y., 436 U.S. 658, 691, 694-95 (1978). A plaintiff must show a "direct causal link

between a municipal policy or custom and the alleged constitutional deprivation." City of
Canton v. Harris, 489 U.S. 378, 385 (1989). A direct casual link can be shown where the
municipality's failure to train "amounts to deliberate indifference to the rights of persons . . .
." See Roskos v. Sugarloaf Twp., 295 F. Supp. 2d 480, 487 (M.D. Pa. 2003).

Kairo-Scibek bases her § 1983 claim on her Fourteenth Amendment right to
procedural due process. She alleges that the violation of that right caused numerous injuries:
(1) depression; (2) loss of half of her pay while on sabbatical for the 2009-2010 school year
due to depression; (3) aggravation of her diabetes; (4) migraines; (5) insomnia; (6) post
traumatic stress; (7) anxiety; (8) panic attacks; (9) panic disorder; and (10) loss of opportunity
to become a "highly qualified" teacher in areas other than reading and special education due to
a program offered to the teachers when she was on suspension.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall .
. . deprive any person of life, liberty, or property, without due process of law . . . ." U.S.
Const. amend. XIV, § 1. Although the Due Process Clause protects both the substance of
what is deprived and the procedure used to deprive it, Kairo-Scibek only asserts a procedural
due process claim.

In considering a procedural due process claim, courts look to (1) whether the interest
deprived falls within the scope of the Fourteenth Amendment's protection of "life, liberty, or
property," and (2) "whether the procedures available provided the plaintiff with 'due process
of law.'" See Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) (citing Robb v. Phila., 733
F.2d 286, 292 (3d Cir. 1984)).

Courts look to state law to determine whether one has a "legitimate claim of
entitlement," thus a protected property interest. Bd. of Regents of State Colls. v. Roth, 408
U.S. 564, 577 (1972). Federal constitutional law then determines what process is due. See
McDaniels v. Flick, 59 F.3d 446, 458 (3d Cir. 1996).

In looking to state law, a property right in Pennsylvania "may be created by a statute,
regulation, or contract." Dept. of Auditor Gen. v. Council 13, Am. Fed'n of State, Cnty. &
Mun. Employees, AFL-CIO, 582 A.2d 98, 101 (Pa. Commw. Ct. 1990) (citing Sasko v.

8

<u>Charleroi Area Sch. Dist.</u>, 550 A.2d 206 (Pa. Commw. Ct. 1988)).  Since property rights can be created through contracts in Pennsylvania, Third Circuit courts have recognized protected property rights created by collective bargaining agreements.  <u>See id.</u>; <u>see</u> <u>also</u> <u>Dee v. Borough of Dunmore</u>, 549 F.3d 225 (3d Cir. 2008) (stating a CBA provision created a property interest in not being "disciplined and/or discharged without just cause") <u>remanded</u> <u>to</u> No. 3:05-CV-1342, 2010 WL 1626908 (M.D. Pa. Apr. 21, 2010); <u>see also</u> <u>Lane v. Bonin</u>, 772 F.Supp.2d 678 (W.D. Pa. 2011) (stating a CBA can be the basis of a procedural due process claim where the procedure in the CBA was not followed); <u>see also</u> <u>Jendrzejewski v. Watson</u>, No. 3:2008-69, 2009 WL 789887 (W.D. Pa. Mar. 24, 2009) (allowing procedural due process claim to go forward based on the CBA, which created a property right, even though facts did not trigger process provided by 71 P.S. § 65 because the plaintiff was not terminated or reduced in rank).

Kairo-Scibek argues that she had a protected property interest in her employment with the District and "in not being suspended without just cause." (Doc. 50 at 3, 4.) Kairo-Scibek states this protected property interest comes from Article II, paragraph 9 of the CBA, which states, "No member of the bargaining unit shall be discharged, disciplined, suspended or laid off without just cause." (Doc. 50 at 4.)

The District argues Kairo-Scibek does not have a protected property interest created by the CBA's "for cause" provision by citing <u>Banks v. Redevelopment Authority of the City of Philadelphia</u>, 416 F.Supp. 72 (E.D. Pa. 1976). (Doc. 42 at 9-10.) The District offers dicta in <u>Banks</u> which states, "it is no longer arguable that 'for cause' language grants a property interest as a matter of federal constitutional law." <u>Id.</u> at 73.  In making this statement, the <u>Banks</u> court referenced <u>Bishop v. Wood</u>, 426 U.S. 341 (1976). In <u>Bishop</u>, the Supreme Court gave deference to the interpretation of a state ordinance, which did not contain an explicit "for cause" provision, to the North Carolina District Judge and the Court of Appeals for the Fourth Circuit because it was open to two interpretations. <u>Bishop</u>, 426 U.S. at 345-46.  Because of the context of the cited statement in <u>Banks</u>, we find that it does not control here, where an explicit "for cause" provision exists.

Third Circuit case law has recognized the creation of a protected property interest

based on a "for cause" provision.  For example, in <u>Dee v. Borough of Dunmore</u>, 549 F.3d 225 (3d Cir. 2008), the Third Circuit Court of Appeals recognized that "employment contracts that contain a 'just cause' provision create a property interest in continued employment." <u>Dee</u>, 549 F.3d at 231 (quoting <u>Wilson v. MVM, Inc.</u>, 475 F.3d 166, 177 (3d Cir. 2007)).  In <u>Dee</u>, the plaintiff, a full-time firefighter, was suspended with pay for eight days pending a hearing. <u>Id.</u> at 228.  The plaintiff was subject to a CBA, which stated, "It is agreed that the Borough Council has the right to discipline and/or discharge Employees for just cause." <u>Id.</u> at 231. The court in <u>Dee</u> found that the CBA provision "created a constitutionally protected property interest in not being suspended without just cause." <u>Id.</u> at 228.  The court went on to "reject any argument that Dee lacks a property interest because suspension appears to be less drastic form of discipline than termination," since the Borough chose to give the plaintiff the entitlement. <u>Id.</u> at 231.  The court also found that 53 Pa. Stat. § 46190, which does not allow a firefighter to be suspended except for cause, also created a protected property interest. <u>Id.</u> at 230.  Although the court in <u>Dee</u> found a property interest created by the CBA and the statute, the court made it clear that "[e]ven without 53 Pa. Stat. § 46190, . . . Dee had a constitutionally protected property interest based on the terms of the CBA." <u>Id.</u>

  <u>Dee</u> is analogous to the present case because Kairo-Scibek and the plaintiff in <u>Dee</u> were subject to similar CBA provisions, which in effect did not allow an employee to be disciplined without just cause.  The <u>Dee</u> court found that even though a suspension is a lesser form of discipline, the CBA still created a property interest in not being suspended without cause.  Therefore, the court rejects the District's argument that a "just cause" provision does not create a protected property interest.  We find that Kairo-Scibek has a protected property interest in not being suspended without just cause because the District chose to grant such an interest through Article II, paragraph 9 of the CBA.

  Due to Third Circuit case law, there is no question that Kairo-Scibek has a property interest under the Fourteenth Amendment in not being suspended without just cause.  It then becomes a question of federal law as to what process is due and "whether the procedures available provided the plaintiff with due process of law." <u>Alvin</u>, 227 F.3d at 116.

Kairo-Scibek argues she was deprived due process when she was not afforded (1) pre-deprivation process before her suspension with pay; (2) post-deprivation process after her suspension with pay; (3) pre-deprivation process before her suspension without pay; and (4) post-deprivation process after her suspension without pay. (Doc. 50 at 4-5.) Each one will be discussed in turn.

A.      Suspension with Pay - Pre-deprivation Process

Although due process is flexible, "an essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ., 574 F.3d 214, 220 (3d Cir. 2009) (quoting Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 542 (1985)). "[W]here it would be impractical to provide pre-deprivation process, post-deprivation process satisfies the requirements of the Due Process Clause." Gilbert v. Homar, 520 U.S. 924, 930 (1997).

Courts balance three factors delineated by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319 (1976), to determine what process is due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335.

The private interest at stake is Kairo-Scibek's interest in not being suspended with pay for an indeterminate amount of time. Kairo-Scibek was suspended with pay from March 29, 2007 to December 27, 2007. She continued to receive her salary and benefits during her suspension with pay. Because Kairo-Scibek did not experience an economic burden, as compared to being terminated or suspended without pay, Kairo-Scibek's interest is minimal. See Smith, No. 3-CV-1343, 2011 WL 4458787.

Considering the second factor, "when an individual is not provided with any form of pre-deprivation process, as in this case, the risk of an erroneous deprivation of his

11

constitutionally protected interest . . . is heightened considerably." <u>Dee</u>, 549 F.3d at 232.

Kairo-Scibek was suspended with pay the day after the District learned of the allegations.

Because she was not given an opportunity to be heard prior to her suspension, there is a

substantial risk of erroneous deprivation.  <u>See</u> <u>Smith</u>, No. 3-CV-1343, 2011 WL 4458787

(finding that a pre-deprivation hearing would have prevented the erroneous deprivation when

a firefighter was suspended before given the opportunity to be heard concerning records that

indicated he was delinquent in Fire Academy Training).

The government's interest is the safety of the students.  The District argues that the

first time they were aware of the allegations was when the search warrant was executed.  Upon

being told the allegation that Kairo-Scibek struck three students with a paddle and shoved

their faces into a pillow to muffle their screaming, the Superintendent and School Board

President decided to suspend Kairo-Scibek with pay, pending the police investigation.  As a

result of the search warrant, a wooden pointer with a paddle on one end was found, but a

pillow was not.

Although Kairo-Scibek argues that she shared the room with a music teacher, the

District's main interest was in protecting the children.  Superintendent Garzella stated,

> We did not know at that point in time whether [Kairo-Scibek] was guilty or
> innocent. [W]e would assume she was innocent until proven guilty but,
> however, the liability of us keeping her there and if something were to happen
> with another student or with the same students, . . . the District would have
> been in a very very liable situation.  So to protect her, to protect the School
> District, to protect the children, we thought it would be best to remove her from
> that situation until the D.A.'s office moved forward with their investigation and
> their process.

(Garzella Dep. 19.)  Recognizing the need to protect the children, Garzella weighed the harm

to Kairo-Scibek and the potential harm to future children and the three children who raised the

allegations. (Garzella Dep. 18-19.)  Garzella stated that in suspending Kairo-Scibek with pay,

"there was no interruption to anything other than the fact that she was not at work.  We just

didn't think it was healthy for her to be in that situation." (Garzella Dep. 18-19.)  The

District's interest in protecting the children after allegations of abuse against Kairo-Scibek

were reported, created an extraordinary circumstance.  <u>See</u> <u>Smith</u>, No. 3-CV-1343, 2011 WL

4458787 (finding the government's interest in public safety concerns outweighed the firefighter's interest in being suspended with pay for eight days when the fire chief thought the plaintiff was delinquent in required Fire Academy Training); see also Morgan v. Covington Twp., 648 F.3d 172 (3d Cir. 2011) (finding the government's interest in protecting the integrity of the police force created an extraordinary circumstance that excused pre-deprivation process when a police officer was suspended with pay while an investigation into the officer's misconduct was ongoing).

Similarly, the Third Circuit Court of Appeals found in a non-precedential case, Jerrytone v. Musto, 167 Fed. Appx. 295 (3d Cir. 2006), that an extraordinary circumstance existed when a teacher was placed on paid suspension following allegations of serious misconduct and criminal activity in his classroom. Jerrytone, 167 Fed. Appx. at 301. The court balanced the Mathews factors and found that, "[b]ecause of the strength of the state's interests in protecting students and maintaining public confidence in the school system, it would have been 'impractical to provide pre-deprivation process.'" Id. (quoting Gilbert, 520 U.S. at 930 (1997)).

Kairo-Scibek's due process rights were not violated when she was suspended with pay without pre-deprivation process because the government's interest in the children's safety outweighed both Kairo-Scibek's minimal interest in not being suspended with pay and the substantial risk of erroneous deprivation. No genuine issue of material fact exists because process is a legal determination to be decided by federal law. McDaniels, 59 F.3d at 458.

B.      Suspension with Pay - Post-deprivation Process

Although "[p]ost-deprivation process satisfies the requirements of the Due Process Clause" when an extraordinary circumstance requires the state to act quickly, excusing pre-deprivation process, see Gilbert, 520 U.S. at 930, a plaintiff bringing a deprivation of procedural due process claim, must take "advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." Alvin, 227 F.3d at 116. "A due process violation 'is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.'" Id. (quoting Zinermon v. Burch, 494

U.S. 113, 126 (1990)).

To take advantage of the process available, such as grievance procedures, a plaintiff must have sufficient notice.  Sufficient notice "apprises the vulnerable party of the nature of the charges and general evidence against him, and . . . is timely under the particular circumstances of the case."  Gniotek v. Phila., 808 F.2d 241, 244 (3d Cir. 1986).  "The employee need not be informed as to all of the evidence, but at least the substance of it."  McDaniels, 59 F.3d at 454.

Kairo-Scibek argues that she did not receive sufficient notice because no one from the District spoke with her about the charges or specifically stated why she was being suspended.  On March 28, 2007, following the search of her classroom, the police spoke with Kairo-Scibek.  Kairo-Scibek stated, "[H]e called me in and read me my rights and asked if he can ask me questions.  And I said I would love to but I would rather have a lawyer present." (Pl. Dep. 13.)  The police told Kairo-Scibek "[w]hat they were looking for and what the charges were and what they had found."  Id.  Through this conversation, Kairo-Scibek had notice of the charges, which were endangering welfare of children and simple assault.  Kairo-Scibek also had notice of what the police were looking for and what they found.[2]

At the end of the following day, March 29, 2007, Principal Whalen told Kairo-Scibek to collect her belongings since she was "going to be on suspension with pay."  Id.  Although the principal did not specifically give Kairo-Scibek notice of the charges and evidence against her, we find that Kairo-Scibek had sufficient notice.  Kairo-Scibek had knowledge of the charges against her and the substance of the evidence when police spoke with her the previous day.  See Fraternal Order of Police Lodge No. 5 v. Tucker, 868 F.2d 74, 80 (3d Cir. 1989) (finding notice insufficient when plaintiff was not told specifics about the allegations or the evidence regarding the allegation); see also Schmidt v. Creedon, 639 F.3d 587, 599 (3d Cir. 2011) (discussing Copeland v. Phila. Police Dep't, 840 F.2d 1139 (3d Cir. 1988) (finding

---

[2] Police found one wooden pointer, one wooden pointer with a paddle on one end, and a wooden yard stick. Police also looked for, but did not find, a pillow.

14

sufficient notice of the grounds of a suspension when a police inspector notified an officer that his urinalysis showed he had used drugs)). The notice was also timely under the circumstances because it occurred before she was suspended with pay, allowing her to grieve her suspension with pay or request a hearing.  Therefore, Kairo-Scibek had sufficient notice to fully avail herself of the grievance and arbitration procedures.

Grievance procedures and arbitration have been held to provide adequate post-deprivation due process.  See Dykes v. Se. Pa. Transp. Auth., 68 F.3d 1564, 1565 (3d Cir. 1995) (holding that due process is met when a grievance/arbitration procedure exists and is followed); see also Pederson v. S. Williamsport Area Sch. Dist., 677 F.2d 312, 317 (3d Cir. 1982) (holding that arbitration satisfies procedural due process).  "The risk of an erroneous determination in the grievance/arbitration procedure is not large, and the value of additional or substitute procedures is not great."  Dykes, 68 F.3d at 1572.  When adequate post-deprivation procedures exist, a plaintiff must avail him or herself of those procedures to properly state a procedural due process claim.  See Alvin, 227 F.3d at 116.

The District argues that Kairo-Scibek did have adequate grievance and arbitration procedures available to her.  Kairo-Scibek recognizes the availability of the grievance and arbitration procedures and does not argue they are inadequate.

There is no genuine issue surrounding whether the District provided grievance and arbitration procedures.  They provided the grievance and arbitration procedures in Article I, paragraph 8, of the CBA.  Upon being suspended with pay, Kairo-Scibek did not avail herself of the perceivably adequate grievance and arbitration procedures.  "A state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them."  Alvin, 227 F.3d at 116 (quoting Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982)).  Therefore, the District cannot be held to have violated Kairo-Scibek's due process when pre-deprivation process was excused due to an extraordinary circumstance, and adequate procedural safeguards existed.

C.     Suspension without Pay - Pre-deprivation Process

Although the general rule is to provide pre-deprivation due process, the Supreme Court

has found that when a person in a position of "great public trust and high public visibility" is charged, an extraordinary circumstance exists, excusing pre-deprivation process, since there is "adequate assurance . . . the suspension is not unjustified." See Gilbert, 520 U..S. at 933-34. If no extraordinary circumstance exists though, "due process requires notice and a hearing prior to suspension without pay, even where the union grievance procedures, after the fact, fully compensate erroneously suspended employees." Creedon, 639 F.3d at 597. The purpose of a pre-suspension hearing is to "assure there are reasonable grounds to support the suspension without pay." Id. at 933. An arrest and formal charges "by an independent body demonstrate[s] that the suspension is not arbitrary." Id. at 934 (quoting Fed. Deposit Ins. Corp. v. Mallen, 486 U.S. 230, 244 (1988)). Additionally, "felony charges 'itself is an objective fact that will in most cases raise serious public concern.'" Id. (quoting Mallen, 486 U.S. at 244-45)).

The Supreme Court in Gilbert found there was no deprivation of procedural due process when a police officer was immediately suspended without a hearing as a result of being arrested and charged. Id. at 927. In weighing the Mathews factors, the court found that the private interest of being suspended without pay is "relatively insubstantial (compared to termination)." Id. at 932. Meanwhile, "the State has a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers." Id. The court went on to find that additional procedures were not needed since an independent third party already "determined that there is probable cause to believe the employee committed a serious crime." Id. at 934. Therefore, in Gilbert, the purpose of a pre-suspension hearing was met and no additional pre-suspension procedures were needed.

Similarly, in Jerrytone, the Third Circuit Court of Appeals found that a teacher's due process rights were not violated when he was not given a hearing prior to his suspension without pay following the filing of criminal charges against him. See Jerrytone, 167 Fed. Appx. at 301. The court found that "an immediate hearing would have been redundant because a judge had carefully determined that there was probable cause for the criminal

16

charges when the indictment was issued." Id. (citing Mallen 486 U.S. at 240).

Kairo-Scibek was arrested on December 19, 2007, for three counts of endangering welfare of children, a felony in the third degree, and three counts of simple assault, misdemeanors in the first degree. On December 27, 2007, at the next school board meeting, the District suspended Kairo-Scibek without pay. Kairo-Scibek argues that her due process rights were violated when she did not receive a hearing prior to her suspension without pay.

Similar to the plaintiffs in Gilbert and Jerrytone, Kairo-Scibek, a teacher, held a position of "great public trust and high public visibility." Therefore, the District had a significant interest in immediately suspending Kairo-Scibek once she was charged with endangering welfare of children and simple assault. We agree with the District, who argues that a pre-suspension hearing would have been redundant since a third party had already determined that there was probable cause Kairo-Scibek committed the crimes. The purpose of a pre-suspension hearing, assuring "that there are reasonable grounds to support the suspension without pay," were met when Kairo-Scibek was arrested and charged based on an independent third party's finding.

Kairo-Scibek also argues that she was not provided sufficient notice before her suspension without pay. On January 3, 2008, Superintendent Garzella sent Kairo-Scibek a letter stating, "Please be advised, at the December 27, 2007 School Board meeting, the Board of Directors passed a resolution to place you on suspension without pay. The suspension will be in effect pending the outcome of your imminent hearing." Although the District did not specifically state the charges and evidence against Kairo-Scibek in the letter, Kairo-Scibek still had sufficient notice. There is no question Kairo-Scibek had notice of the conduct giving rise to her suspension without pay after being told of the charges against her and subsequently arrested. See Watson v. Beckel, 242 F.3d 1237 (10th Cir. 2001) (finding that notice was sufficient when a student knew of the allegations that were subject of the investigation and was told by a police officer that he was being investigated for an assault of his roommate).

Since federal law determines what process is due, there are no genuine issues of material fact surrounding Kairo-Scibek's suspension without pay, as we find a pre-suspension

17

hearing is not required when a person in "great public trust and high visibility" is arrested and charged with a felony. Additionally, we find no issue of material fact that Kairo-Scibek had sufficient notice since she had knowledge of the charges and evidence against her. Therefore, we find that Kairo-Scibek was not deprived due process when she was suspended without pay without a pre-suspension hearing or oral or written notice from the District delineating the specific charges and evidence against her.

D.      Suspension without Pay - Post-suspension Process

When pre-deprivation process is excused because of an indictment, a prompt post-suspension hearing satisfies due process. See Gilbert, 520 U.S. at 935-36. As stated earlier, grievance procedures and arbitration provide adequate post-deprivation due process, so a plaintiff must take advantage of those processes for a procedural due process claim to be ripe. Id.; see Dykes, 68 F.3d at 1565; see also Pederson, 677 F.2d at 317.

Kairo-Scibek does not argue the inadequacy of the grievance and arbitration procedures provided in the CBA. Kairo-Scibek also does not argue that the arbitration would not have been a prompt post-suspension hearing. Because Kairo-Scibek does not raise these issues, we will not discuss them. Kairo-Scibek does argue that she was deprived due process because she was not afforded a hearing after her suspension without pay, even through her grievance procedure. In response, the District argues that Kairo-Scibek received due process through the grievance procedures.

Kairo-Scibek took advantage of the grievance process by initiating her grievance on March 6, 2008, pursuant to Article I, paragraph 8, which states, "The parties to this Agreement agree that any claim by the Association or a teacher that there has been a violation of the terms of this Agreement, shall be a grievance." (Pl. Dep. Ex. 3.) Kairo-Scibek's grievance went to Step IV, and Step V, arbitration, was scheduled for April 23, 2009. The District sent a letter to the arbitrator on October 6, 2008, stating its availability for the scheduled arbitration. On October 14, 2008, the charges against Kairo-Scibek were nol processed, and she was immediately removed from suspension without pay. At this time, the District reimbursed Kairo-Scibek's salary and benefits from December 27, 2007.

Kairo-Scibek did not take her grievance to the arbitration scheduled for April 23, 2009. It was Kairo-Scibek's understanding that because she received back pay, the "grievance was no longer a grievance to be grieved." (Pl. Dep. 26:20-21.) Kairo-Scibek stated that she spoke to her union representative about continuing the grievance to arbitration but was advised she was "really not going to get anywhere" since she was reimbursed back pay. (Pl. Dep. 28:7-8.) Kairo-Scibek was advised she would have to initiate new grievances.

The District provided Kairo-Scibek with a process that would have given her the opportunity to be heard if she took advantage of the procedures. As courts have already held, grievance procedures and arbitration provide adequate post-deprivation due process, see Dykes, 68 F.3d at 1565, and a plaintiff must avail herself of those procedures to properly state a procedural due process claim. See Alvin, 227 F.3d at 116. If Kairo-Scibek had not withdrawn her grievance, she would have fully availed herself of the provided procedures and would have been given her opportunity to be heard at arbitration. Therefore, we find that Kairo-Scibek did not avail herself of all of the process the District provided. See Keim v. Cnty. of Bucks, 322 F. Supp. 2d 587, 591 (E.D. Pa. 2004) (holding procedural due process was satisfied when plaintiff availed himself of three of the four steps in a grievance procedure when he refused to testify at a hearing or appeal to arbitration).

We find that there is no genuine issue of material fact that the District provided Kairo-Scibek a grievance and arbitration procedure through the terms of the CBA or that Kairo-Scibek withdrew her grievance before it went to scheduled arbitration. Accordingly, we find that there was no due process violation because a violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." Alvin, 227 F.3d at 116 (quoting Zinermon, 494 U.S. at 126).

### Conclusion

Viewing the evidence in the light most favorable to Kairo-Scibek, we find that Kairo-Scibek's § 1983 claim fails because the District did not violate her Fourteenth Amendment right to procedural due process. Accordingly, we find that the District is entitled to summary judgment. An appropriate order follows.

19